## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## WILKES-BARRE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 5:13-bk-02006-JJT |
| | ) | Chapter 7 |
| ROBERT JOHN REED, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| ROBERT JOHN REED, | ) | Adversary No. 5:13-ap-00207-JJT |
| ANNALISA BLACK, and ALBY | ) | |
| LESLIE BLACK, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | Bankruptcy Courtroom No. 2 |
| | ) | 274 Max Rosenn U.S. Courthouse |
| versus | ) | 197 South Main Street |
| | ) | Wilkes-Barre, Pennsylvania 18701 |
| HELLER'S GAS, INC. *d/b/a* | ) | |
| BACK MOUNTAIN BOTTLED GAS, | ) | |
| | ) | June 17, 2014 |
| Defendant. | ) | 12:31 P.M. |

TRANSCRIPT OF TESTIMONY OF TRIAL (DOCKET 7)
BEFORE HONORABLE JOHN J. THOMAS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Robert John      Sabatini Law Firm, LLC
Reed:                    By:  CARLO SABATINI, ESQ.
                         216 North Blakely Street
                         Dunmore, Pennsylvania 18512

For Heller's Gas, Inc.:  ROBERT D. SCHAUB, ESQ.
                         15 South Franklin Street
                         Wilkes-Barre, Pennsylvania 18711-0075

Audio Operator:          PATRICIA RATCHFORD

**Transcription Service:**    **TRANSCRIPTS PLUS, INC.**
                              **435 Riverview Circle**
                              **New Hope, Pennsylvania 18938**
                              **Telephone: 215-862-1115**
                              **Facsimile: 215-862-6639**
                              **e-mail CourtTranscripts@aol.com**

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

<u>INDEX</u>

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| THOMAS GORDON | | | | |
| By Mr. Sabatini | 3 | | 43 | |
| By Schaub | | 35 | | 46 |

| EXHIBITS | | ID | ADMITTED |
|---|---|---|---|
| P-D | Standard statements | 17 | |
| P-E | Statement | 17 | |
| | | | |
| D-1 | Computer memo screen | 36 | |
| D-2 | E-mails | 41 | |

1   (Proceedings commenced at 11:30 A.M.  At the requested of the

2   ordering party, only the testimony of Tom Gordon, commencing at

3       12:31 P.M. and concluding at **** are transcribed.)

4                THOMAS GORDON, PLAINTIFF'S WITNESS, SWORN

5            THE COURT:  Okay.  Could you spell your last name,

6   please?

7            THE WITNESS:  G-O-R-D-O-N.

8            THE COURT:  Thank you.

9            THE WITNESS:  You're welcome.

10           THE COURT:  Okay, Mr. Sabatini.

11                     DIRECT EXAMINATION

12  BY MR. SABATINI:

13  Q    Mr. Gordon, could you please state your occupation?

14  A    I'm a Vice President of Collections for Heller's Gas.

15  Q    And how long have you been with Heller's Gas?

16  A    Uh, five years.

17  Q    And what did you do before that?

18  A    I've done a number of things before.  How far back you

19  want to go?

20  Q    Well, were you ever an attorney, licensed to practice in

21  Pennsylvania?

22  A    Yes.

23  Q    And, uh -- without -- are you still licensed to practice

24  in Pennsylvania?

25  A    No.

1  Q    And without getting too much into the reasons for that, I

2  would just like to -- could you agree that the reason you're no

3  longer licensed has nothing to do with whether you were

4  competent as an attorney?

5  A    Yes, I'd agree with that.

6  Q    So, are you responsible for formulating the policies and

7  procedures that Heller's Gas follows to collect accounts, both

8  outside of bankruptcy and after a bankruptcy has been filed?

9  A    No, I'm not responsible for formulating, I'm responsible

10 for implementing them.

11 Q    Do you have any input into the formulation of those?

12 A    Uh, in what regard?

13 Q    Do you -- who is responsible for formulating them?

14 A    The President and owners.

15 Q    Who's that?

16 A    Paul Gardner, Junior.

17 Q    And is he here today?

18 A    No.

19 Q    Um, so does Mr. Gardner create these policies with any

20 input from you?  Or does he --

21 A    No.

22 Q    Does he do them --

23 A    They were -- they were already in place when I, uh, was

24 hired.

25 Q    Are they written policies or --

1  A    Not that I know of.  This is what I was told is how the

2  procedure would be.  And it's, of course, is what he also

3  briefs all the managers and other people in who are involved

4  with accounts receivable, and that sort of thing.

5  Q    So there are no written policies or procedures regarding

6  how accounts are to be collected before a bankruptcy case is

7  filed?

8  A    N -- N -- you're asking me is there a bankruptcy policy.

9  Q    No, I'm asking you in the situation where someone does not

10 file bankruptcy --

11 A    Okay.

12 Q    -- are there any written policies or procedures for how

13 you're to collect that person's account?

14 A    Uh, I don't know -- there's not like a handbook or

15 anything, Mr. Sabatini, or a manual.  There's instruction,

16 there's practice and policy, and in the event of -- if there's

17 some particular issue that comes up that needs clarification,

18 there could be an e-mail or meeting.  But there's not like a

19 manual or a guide or some kind of --

20 Q    Whether it's in manual form or a guide form, is there any

21 standing writing that --

22 A    That's what I'm saying --

23 Q    Nothing.

24 A    -- there -- there was no standing -- there's no compiled

25 book.  If a particular issue comes up --

1           THE COURT:  I think what Mr. Sabatini is asking, if

2   there's a written procedure.

3           THE WITNESS:  Yeah.  No.

4   BY MR. SABATINI:

5   Q    And is there any written procedure that --

6           THE COURT:  And when we talk "written," we're talking

7   electronic writing.

8           THE WITNESS:  Right.  And I was going to say, it

9   could be an ad hoc thing.  If something comes up, relates to a

10  particular issue, there could be an exchange of e-mails.  But

11  it's not a formal policy.

12          MR. SABATINI:  Right.

13          THE WITNESS:  You know --

14  BY MR. SABATINI:

15  Q    And let me -- let me say, forgetting about any particular

16  issue that arises --

17  A    Okay.

18  Q    -- any particular case --

19  A    Okay.

20  Q    -- are there any writings, paper or electronic, that

21  describe how you are to collect accounts before a bankruptcy is

22  filed?

23  A    Uh, not that I'm aware of.  I don't re -- I don't refer to

24  anything.  I'd be the person who would have it, I would think.

25  I -- I don't have anything like that, so --

1  Q    All right.  You would be the one who would know, and you

2  don't know of anything.

3  A    Right.

4  Q    So it's safe to say --

5  A    Right.

6  Q    -- there is nothing, right?

7  A    Right.

8  Q    And is -- same question, but for after a bankruptcy has

9  been filed, are there any writings --

10 A    Nope.

11 Q    -- that describe --

12 A    No.

13 Q    -- how you're to collect an account once a bankruptcy case

14 has been filed?

15 A    What we have is a clear policy.  I'm not aware of it being

16 reduced to a writing.

17 Q    Thank you.  Now earlier you were sitting in the courtroom

18 when your attorney was having this colloquy with the Court.

19 A    Right.

20 Q    And did you hear everything that was discussed there?

21 A    I -- I think I heard most of it, yes.

22 Q    And is there any representation that he made at all today

23 that you would say was not completely 100 percent accurate that

24 you would like to clarify?

25 A    Uh, well, I -- I don't think he was being disingenuous,

1  but I mean obviously --

2  Q    Right.

3  A    -- obviously if there's something that would be helpful to

4  the Court, I'd certainly be willing to answer it and, uh --

5  Q    No, and, sir, I did not mean to imply that he was --

6  A    Right.

7  Q    -- being disingenuous.

8  A    Right.

9  Q    But you're the person who has the information that I'm

10 assuming --

11 A    Right.

12 Q    -- he was basing his representations on.  So you heard

13 it --

14 A    Right.

15 Q    -- and -- you heard what was said to the Court --

16 A    Okay.

17 Q    -- and maybe there's something that you didn't explain

18 clearly to him beforehand, and when you heard it said to the

19 Court, you thought "that doesn't seem quite right."

20 A    Okay.  Is there a particular issue that you're honing on?

21          MR. SCHAUB:  Yeah, is there a particular issue,

22 Judge?

23          THE COURT:  Well, just --

24          MR. SCHAUB:  Objection.

25          THE COURT:  Okay.  I'm going to sustain the objection

1  because I think the answer -- the question is very vague.

2          Mr. Schaub made -- entered into some legal

3  conclusions when he was arguing his case, and I don't think

4  this witness can separate what those legal conclusions were

5  from what the factual arguments are.

6          So if you've got specific concerns about the factual

7  allegations that were advanced by Mr. Schaub, then I think you

8  can frame the question in that regard. But otherwise, I don't

9  think it's fair to the witness to -- unless you parse it that

10  way, okay?

11          MR. SABATINI:  Thank you, Your Honor.

12  BY MR. SABATINI:

13  Q    Did you hear Mr. Schaub say that you don't expect to be

14  paid for gas until it's used?

15  A    I -- I heard him having a difficult time trying to explain

16  the propane company policy.  I'm not sure that he was trying to

17  define the whole overall package of how that works.

18          So in that regard, yeah, I do think further

19  clarification is necessary.

20          Does that answer your question?

21  Q    No, you did.  Could you please clarify it?

22  A    When Heller's Gas provides propane to someone, it is at

23  their request for their benefit for a variety of purposes.

24  When we deliver that propane, there is a bill that accompanies

25  it, either left at the premises or sent through the mail.  That

1 bill is due and payable within 30 days.  Okay?

2 Q    I'm sorry.  Let me stop you there.

3 A    Sure.

4        MR. SCHAUB:  Please don't stop him.  Please, Judge,

5 don't let him interrupt.  You asked a question, please let him

6 finish the answer.

7        THE COURT:  That's fine.  I'll let you finish the

8 answer.

9        THE WITNESS:  Okay.

10 BY MR. SABATINI:

11 A    That -- that bill is due and payable within 30 days.

12 There are, however, unique conditions because of the uniqueness

13 of the propane business, which is not under the PUC and which

14 has its own unique -- it's not the car business, it's not --

15 it's propane.  Part of that payment is conditional upon use.

16 And if there's use, or not use, that is calculated into what is

17 ultimately owed by the customer.

18        If I could give you an example, Mr. Sabatini, if it'd

19 be helpful to you.  And I -- I want to be helpful to you, so if

20 I'm not clear, please direct me to be clear.  If we bring out

21 100 gallon propane to somebody, and we set it at their cabin

22 site, they decide they're going to go to Europe instead, they

23 don't want it.  They don't want it.  We go pick it up, and

24 they're refunded the entire amount.  Even though, at that same

25 time, it was due and payable within 30 days as a standing

1 matter of accounting and distribution of goods.

2          There's that -- they get -- in other words, we take -

3 - come back -- they call us up, "We decided we're going to

4 Europe instead."  We pick up the tank, they don't owe us

5 anything.

6 Q    So you -- you deliver a tank to someone's property --

7 A    Right.

8 Q    And this is one of your tanks.  It's not a tank that --

9 A    Right.

10 Q    -- they purchased.

11 A    Exactly, yeah.

12 Q    You retain ownership of the tank.

13 A    Absolutely.

14 Q    So you deliver this tank to their property.  You retain

15 ownership of it.  You fill the tank up with propane.  And they

16 never actually occupy the property.  They don't use one ounce

17 of that propane.

18 A    Right.

19 Q    They call you, and they never give you a dime.

20 A    Never a dime, right.  That happens.

21 Q    They call you, you take the tank back --

22 A    Right.

23 Q    -- and they owe you not a dime.

24 A    Not a dime.  And, in fact, even -- even if there's

25 extenuating circumstances where there is like a partial use,

1  pilot light, that sort of thing, we just write it off.  We --

2  if it's minimal, you know, that we put 100 gallons in, we get

3  99 -- 99.5 back, we still -- they don't owe us anything.

4  Q    You don't charge them for the installation?

5  A    No.

6  Q    And you don't charge them interest?

7  A    We do charge them interest, but if they don't use any

8  propane, and as I say -- and there -- there could be late fees,

9  too, or anything.  And, of course, the driver going to get it,

10  we -- we incur some expenses there.  We don't do it.  It's just

11  a matter of our company policy.

12        We also do it for hardship cases in the case in the

13  same -- same light.

14  Q    So if they don't use any of the propane, and they return

15  the tank six months after you installed it, you write off the

16  six months of interest?

17  A    That's absolutely right.

18  Q    And what if --

19  A    And I think Mr. -- Mr. Harmon could say he does that at

20  the store -- I do it at the corporate level, and they also do

21  it at the store level.

22  Q    And is that true even if they use some of the propane?

23  A    Well, I had -- it'd be depend on how much.  You know?

24  Q    How?

25  A    Well, if they use half, they have to pay for half.

1  Q    They have to pay half -- for half of the propane.

2  A    Right.

3  Q    What about the interest?

4  A    If -- they -- they'd be interest and finance charge on the

5  unpaid portion after -- after 30 days.

6  Q    After 30 days.

7  A    But -- I say, once again, for clarification, Mr. Sabatini,

8  there are a number of reasons why that would -- would or would

9  not be enforced.  Have a hardship -- someone, you know, there's

10  a death in the family, uh, the house burns down.

11  Q    I'm --

12  A    There's a number of things that are part of our ongoing

13  every day policy where we wouldn't insist upon it.

14  Q    It -- that's a policy or that's something that --

15  A    Practice.

16  Q    -- in the exercise of discretion, you say, "Well, in this

17  particular hardship case, I'm not going to charge interest."

18  A    That's correct.  If there's --

19  Q    But you have the --

20  A    There's --

21  Q    -- right --

22  A    There's a discretionary factor there.

23  Q    But you have the right contractually to charge the

24  interest if you wish.

25  A    Are -- are you saying we do have the right or are you

1 saying I just think we have the right?  I don't understand your

2 question.

3 Q    I'm saying when you decide to write off interest because

4 of one of these hardships --

5 A    Right.

6 Q    -- are -- when you're writing that off, is that a decision

7 that you're doing that just because you choose to or because

8 you're required to?

9 A    No, we choose to.

10 Q    So you have the right to not erase any of the interest.

11 A    As long as it's lawful, and -- and relates to propane

12 used, that's correct.

13 Q    What's the interest rate?

14 A    I'm sorry?

15 Q    What is the interest rate?

16 A    Uh,  the -- the legal rate of interest, it's one and a

17 half percent a month.

18 Q    One and a half percent per month?

19 A    Yes, it's 18 per annum.

20 Q    Now if someone owns the propane tank, and asks you to fill

21 the tank with propane --

22 A    Right.

23 Q    -- and then they move to Europe, what happens then?

24 A    It's a -- a customer-owned tank, everything that goes in

25 is theirs in perpetuity.  Whether it's bankruptcy.  They want

1 to let it sit there and not use it ten years, it doesn't

2 matter.  It's a customer-owned tank, once it goes in, it's

3 theirs.

4          Now they -- they would owe us the money for that.

5 And if ultimately they didn't pay, without bankruptcy

6 protection, we would pursue legal action to collect it.

7 Q    So they own the gas as soon as you put it in the tank if

8 it's their tank.

9 A    If it's a customer-owned tank.  Now they do have -- also

10 have the option, as anyone else would who has a customer-owned

11 tank, of calling up and saying, "We decided to move our base of

12 operations, we want you to pump out the propane and credit our

13 tank -- our account for it."  That could happen, and it does

14 happen.  We'd comply with that wish, and then hopefully keep

15 them as a customer in their new location.

16 Q    Now did you send -- do you know if Heller's Gas sent a

17 bill to Mr. Reed on or about April 30th of 2013?

18 A    I know that there were -- there were some post bankruptcy

19 filing statements that went out in the context of the ongoing

20 negotiation of reaffirmation of the debt that you were involved

21 in also.

22 Q    This was a negotiation regarding a reaffirmation of the

23 debt?

24 A    Yes, you were talking about -- I'm sure -- was it -- uh --

25 uh -- Mr. Reed or Mr. Black?  Who was the customer of Back

1  Mountain?  I want to make sure I'm not misrepresenting --

2  Q     Mr. Reed is Back Mountain.

3  A     Mr. Reed, Back Mountain.  Yeah, uh -- because he said he

4  didn't even know that we were included in the bankruptcy, and

5  he wanted to know about, you know, the possibility of

6  continuing for service.  In fact, he apologized we were

7  included but we said, okay, we'll work that out, and there was

8  a series of e-mails that went back and forth about, you know,

9  whether to pay, whether to continue service, and that sort of

10 thing.

11 Q     All right.  But just to be clear --

12 A     Yeah.

13 Q     -- did Mr. Reed or I ever use the word "reaffirmation?"

14 A     Uh, the word, no.  The principle, the context, the

15 meaning, yes.

16 Q     Okay.  So the statement that went to Mr. Reed --

17        MR. SABATINI:  Well, actually I'd like to, at this

18 point, to put in another stipulation.  The parties have agreed

19 that the allegations in the complaint at Paragraph 23 and

20 Paragraph 24 will be admitted by the defendant.

21        MR. SCHAUB:  That's correct, Judge.

22        THE COURT:  Okay.  So recognized.

23        MR. SABATINI:  May I approach, Your Honor?

24        THE COURT:  Yes.

25                             (Pause)

1  BY MR. SABATINI:

2  Q    I'm handing you a copy of the complaint that was filed in

3  this case, and I've turned it to Exhibit D, and I'd like you to

4  tell me if you recognize that -- that document.

5  A    Um, this looks like the -- a copy of our standard

6  statements.

7  Q    All right.  And that was sent to Mr. Reed in this case?

8  A    Uh --

9         THE COURT:  Is that the same as Exhibit -- as Exhibit

10 E?

11        MR. SABATINI:  Yes, Exhibit E, yes, Your Honor, the

12 first -- the first page.

13        THE COURT:  The first page.  Okay.  All right.  Thank

14 you.

15 BY MR. SABATINI:

16 A    Yeah, this was a Back Mountain account before it came over

17 to, uh --

18 Q    All right.  And I'd like, if you could, to just go through

19 that statement and tell me what each of those lines represents

20 and what the dollar amounts represent.

21 A    Well, uh, under the description, is that --

22 Q    Correct.

23 A    Okay.  There was a -- a balance forward of $230.04.

24 Q    What is that?

25 A    When is that?

1  Q    What is that?  What is the balance forward?

2  A    That would be for the propane that was delivered.

3  Q    Propane that was delivered, but which had not yet been

4  paid, is that right?

5  A    That's correct.

6  Q    Okay.  So the balance forward includes your company's

7  charge for all of the propane that was delivered, whether or

8  not that propane had actually been used at that point, is that

9  right?

10 A    Well, that's right, with this clarification.  Is that any

11 propane which is not used, that amount of value comes off of

12 what is due.

13 Q    Okay.  But that hasn't happened yet, right?  Now we're

14 just on the balance forward.

15 A    Right, okay.

16 Q    Right?

17 A    I'm with you.

18 Q    So the balance forward --

19 A    Yeah.

20 Q    -- line represents the amount that Heller's claims it's

21 owed for all the propane that's been delivered, irrespective of

22 the current balance -- I'm sorry -- the current amount that

23 remains in the tank, is that accurate?

24 A    That -- that represents the value of the delivery.

25 Q    All right.  And does it take -- does the balance forward

1  line itself take into account whether or not any of that

2  delivery has actually been consumed by the user?

3  A    That line itself -- by itself as written does not.

4  Q    Thank you.  What's the next line?

5  A    Is a credit card payment, $75, which is credited to the

6  account.

7  Q    All right.  And what's the line after that?

8  A    Gas and tank, 82.62.

9  Q    And what is that?

10  A    That -- that is -- if I understand this statement

11  correctly, that means that's how much gas was delivered into

12  the tank.

13  Q    So are you telling me that that means that that amount of

14  gas was delivered into the tank on that day?

15  A    Well, you -- the -- the -- that's what the statement

16  reflects.  It's -- it's -- there's a tank.  This is how much

17  propane we put in it, and this is how much that propane is

18  worth.  And there's, of course, any payment are credited

19  against it.

20  Q    All right.  Maybe this will help.  I mean earlier the

21  parties stipulated that all of the gas in the tank was

22  prepetition gas that had been delivered before the bankruptcy

23  case was filed, and that after the bankruptcy case was filed,

24  there were no deliveries.  Could you tell me whether any

25  delivery was made to his tank after the bankruptcy case was

1 filed?

2 A     I -- I -- there were no deliveries after.  But I -- I

3 disagree with your characterization of it.  Your

4 characterization is that the propane was all -- this reflects a

5 demand for payment of pre-filing pro -- and it does not.

6 Q     I --

7 A     It reflects the value of the propane.

8 Q     I haven't said that it represents a demand for payment.

9 A     Okay.

10 Q     But --

11 A     Then I misunderstood you; I apologize.

12 Q     And so that the line -- the 18 gallons, I think you said

13 it is --

14 A     I see "gas and tank," 82.62.

15 Q     That -- is that -- and 82.62 is the dollar amount, right?

16 A     Yeah.

17 Q     That's the dollar amount, right?

18 A     Right.

19 Q     And 18 is -- is the number of gallons in the tank, is that

20 right?

21 A     I'm sorry, repeat that?

22 Q     Is -- are there any other numbers on that line?

23 A     On that line, no.  It's just -- you asked me to read

24 description, and we're over into the amount.  But to the left

25 of that where it says "gas and tank," it says 18.

1  Q    Right.  All right.  So isn't it true that that 18 does not

2  represent a delivery that was made on that date?

3  A    (No verbal response)

4  Q    Is that correct?

5  A    (No verbal response)

6  Q    Instead that number represents what your technician

7  measured as being in the tank.

8  A    It's remaining in the tank.

9  Q    Correct?

10 A    Yeah.

11 Q    So that line does not represent more gas that was

12 delivered.  Instead, that line represents what you calculated

13 on that date as the value of the gas that remained in the tank

14 on that date.

15 A    That's correct.

16 Q    Wasn't that amount already included in the balance

17 forward?

18 A    Right.  So -- so what you're -- to understand by that is

19 that what we're seeking payment of here within the context of

20 reaffirmation is the remaining gas of $82.62.

21 Q    I'm not --

22 A    Not the original figure of what was delivered.

23 Q    I -- if you could answer the question.  That -- that

24 dollar amount that's on that line --

25 A    Right.

1  Q    -- doesn't that dollar amount represent an amount that

2  you're claiming is due for gas which is duplicating an amount

3  that was already in the balance forward line?

4  A    I'm not trying to bicker.  I'm trying to be -- I'm trying

5  to answer as clearly as I can.  Within the delivery, part of

6  that delivery, that 18 gallons that that dollar amount

7  represents, you can say was part of the original delivery

8  that's represented in the dollar figure of 232.64.  Is that

9  helpful?

10         THE COURT:  Could I -- could I ask a question, maybe

11  to clarify what I think -- and you can object to it if you'd

12  like.  I'm just trying to maybe shortcut this.

13         I see in front of me an exhibit, and the exhibit is -

14  - it's dated April 30th, I guess, 2013.  And the payment

15  identified is due is 251.97.

16         THE WITNESS:  Right.

17         THE COURT:  Maybe if we ask this witness just to

18  identify what are the components of that bill, perhaps that

19  would at least allow us to have an understanding of how it was

20  created.  Is that -- is that a fair statement -- fair question?

21         MR. SABATINI:  Sure.

22         MR. SCHAUB:  Yes, Judge.

23         THE COURT:  Okay.

24         MR. SCHAUB:  Yeah.

25         THE COURT:  So a bill was sent --

1          THE WITNESS: Right.

2          THE COURT:    -- I guess.

3          THE WITNESS:  Yeah.

4          THE COURT:  And I think that date's April 30th, 2013,

5   showing a payment due of 251.97.  Could you identify how that

6   bill was calculated?

7          THE WITNESS:  Okay.  That -- that 251.97 is the total

8   value of the -- of all the propane delivered, even pre-filing,

9   and late fee and finance charge.

10          However, this bill was presented with the clear

11   understanding and communication to the parties and the attorney

12   that this bill was for 82.62, which was the gas remaining in

13   the tank.  This is merely informational about how much

14   everything was.  The actual bill owed at that point, if they

15   wanted to continue service, was the 82.62.  And I think there's

16   e-mails to that effect that specifically -- between Mr.

17   Sabatini and the store manager that clarify that.

18          THE COURT:  You can follow-up, Mr. Sabatini, unless

19   you have an objection.

20          MR. SCHAUB:  Pardon me, Judge?

21          THE COURT:  Unless you have an objection.  I'm

22   telling Mr. Sabatini he can follow up on that --

23          MR. SCHAUB:  Oh, yeah, surely.

24          THE COURT:  -- unless you have an objection.

25          MR. SCHAUB:  Sure.  No.  No, that's fine, Judge.

1 BY MR. SABATINI:

2 Q    So that 251.97, could we agree that it double counts the

3 amount that you're claiming was owed for the gas that was still

4 in the tank?

5        MR. SCHAUB:  I object to that, Judge.  It's the third

6 time he's asking.  He keeps using this phrase "double counts."

7 Now Mr. Gordon has just made very clear that this invoice was

8 information, and it specifically identifies the value of the

9 gas, and it specifically identifies for Mr. Sabatini --

10        THE COURT:  I'm going to sustain --

11        MR. SCHAUB:  -- and his client --

12        THE COURT:  I'm going to sustain your objection.  I

13 think you're free to ask that -- whether this 251.97 double

14 counts, but I don't think that you asked it that way.

15 BY MR. SABATINI:

16 Q    Does the 251.97 double count to anything?

17 A    You -- you -- I'm not trying to -- what do you mean by

18 "double count?"

19 Q    The way that I'm looking at the bill is -- is that gas and

20 tank amount is billed.  And that previously, the balance

21 forward was billed.  And that both of those numbers are a

22 component of the 251.97.

23 A    Okay.  Here's the best way I can answer your question, and

24 if I don't answer to your satisfaction, please answer me again.

25 Based on this document and the conversations our store manager

1  had with you and Mr. Reed, if someone was to call our store, or

2  call me and say, "what -- I want to still be your customer,

3  what do I owe?"

4           THE COURT:  Well, you know what, let's --

5           MR. SABATINI:  Uh --

6           THE COURT:  Let's get beyond that.  And, again, I'm

7  not trying -- all I'm trying to do is expedite this process.

8           THE WITNESS:  Right.

9           THE COURT:  You've already made it orally clear --

10          THE WITNESS:  Right.

11          THE COURT:  -- that you don't believe the 251.97 was

12 a demand --

13          THE WITNESS:  Right.

14          THE COURT:  -- based on other documentations and

15 conversations.

16          THE WITNESS:  Okay.

17          THE COURT:  I think the only -- Mr. Sabatini -- all

18 Mr. Sabatini is asking --

19          THE WITNESS:  Okay.

20          THE COURT:  -- if a component of the 251.97 number

21 that you see on this --

22          THE WITNESS:  Okay.

23          THE COURT:  -- counted the $82.62 twice.

24          THE WITNESS:  That -- it didn't -- it's within the --

25 it's within that total figure.

1          THE COURT:  It counted it twice, is that correct?

2          THE WITNESS:  No, it's within the -- it's within --

3   it's what's -- it's what's within the 251.

4          THE COURT:  It --

5          THE WITNESS:  It -- it doesn't extend 251 --

6          THE COURT:  Is 82.62 --

7          THE WITNESS:  Right.

8          THE COURT:  -- a component of the -- of the

9   previous --

10          THE WITNESS:  Yes.

11          THE COURT:  -- balance do of 232.04.

12          THE WITNESS:  It -- it's a component.

13          THE COURT:  Okay.  I think that answers your

14   question, doesn't it?

15          MR. SABATINI:  It does.  Thank you, Your Honor.

16          THE COURT:  Again, I'm trying to be fair here.  If

17   you want to object, Mr. Schaub, don't -- don't hesitate just

18   because I'm asking the question.

19          MR. SCHAUB:  No, I appreciate you doing that, Your

20   Honor.

21          THE COURT:  I want you to understand that. I don't --

22   I don't -- I won't be offended.

23          MR. SCHAUB:  I know you won't.

24   BY MR. SABATINI:

25   Q    Now you said before that the statement was sent in the

1  context -- but I don't want to mis -- so feel free to correct

2  me.  But that your state -- the statement was sent in the

3  context of conversations that I had with somebody, or -- could

4  you -- could you elaborate on that?

5  A    Yes.  Whenever someone files bankruptcy, and we're given

6  notice of it, we give the customer the opportunity of

7  continuing as our customer.  In that context, we're not asking

8  them to pay anything that's part of the bankruptcy, according

9  to our policy.  But if they want to continue with us, we ask

10 them to pay for the gas that's remaining in the tank, and pay

11 C.O.D. going forward until they've established credit once

12 again, or unless the bankruptcy's dismissed, or some other

13 contingency.

14 Q    I'm -- I'm sorry, I don't think I asked that question

15 clearly enough.  Did you say before that I had a conversation

16 with someone?

17 A    You -- you had exchange of e-mails, and you had a

18 conversation with me.

19 Q    Okay.  And during the conversation with you --

20 A    Yes.

21 Q    -- did I ask you to send a monthly statement?

22 A    Did you ask for statements to me?  Uh, no, you didn't ask

23 me to send monthly statements.

24 Q    But a number of monthly statements were sent to this -- to

25 this -- to Mr. Reed, nevertheless, right?

1 A    During the course of time, the issue was unresolved as to

2 whether to continue as customers.  That information was

3 provided so they could make the decision.

4        Once that -- once the decision was made that they

5 weren't going to continue, all statements stopped.

6 Q    Okay.  But I never asked for you to send any of those

7 statements to Mr. Reed, is that correct?

8 A    What you asked me to do is keep the issue of that

9 possibility open.

10 Q    Did I ever ask for you to send the monthly statement to

11 Mr. Reed?

12 A    No.

13 Q    When someone files a bankruptcy case, are monthly

14 statements generally continued to be sent to --

15 A    Absolutely not.

16 Q    Let me just get through the end of the question, sorry.

17 When -- when a bankruptcy case is filed, are monthly statements

18 generally sent to bankruptcy debtors who remain in the system

19 as active customers?

20 A    People who remain as customers receive bills for the

21 propane that they order.  The people who are on C.O.D. must pay

22 for that propane as it's delivered.

23 Q    So if someone remains an active customer, and they have

24 propane that was ordered before the case was filed, then you

25 continue to send that person monthly statements asking them to

 1 pay for the propane --

 2 A    No.

 3 Q    -- that was ordered before the case was filed?

 4 A    No.  What they have to do is pay for the propane that

 5 remains in the tank, and then going forward be C.O.D.

 6 Q    All right.  I'm going to show you --

 7 A    Okay.

 8         MR. SABATINI:  May I approach, Your Honor?

 9         THE COURT:  Yup.

10 BY MR. SABATINI:

11 Q    This is Document 8 on the docket, and this is an answer

12 that was filed by your previous attorney to the complaint, the

13 amended complaint that I filed in this case.  And I'd like to

14 direct your attention to Paragraph 21 of your answer.  And I'd

15 like for you to read that out loud, please, if you could.

16 A    This is an answer, so -- is that correct?

17 Q    Yes.

18 A    So I don't have any context of what it's answering.

19 Q    I understand.

20         THE COURT:  I -- I --

21 A    Should -- do you want me to just read it verbatim anyway?

22         THE COURT:  The question is just to read it, okay?

23         THE WITNESS:  Okay.

24         THE COURT:  Okay.  You're not asked to explain.

25         THE WITNESS:  Okay.

1  A    "Denied as stated.  By way of further response, at the end

2  of April, 2013 billing cycle, and in the ordinary course of

3  business operation, a computer invoice was generated to the

4  debtor is being one of well over 60,000 invoices generated by

5  computer as debtor remained in the system as an active

6  customer.  As of the end of April, the terms of adequate

7  assurance for post petition service, as solicited by debtor's

8  legal counsel, had not yet been solidified between defendant

9  and legal counsel for debtor."

10 Q    Thank you.  So I was hoping you'd give us some context for

11 the first sentence there -- well, the second sentence, that at

12 the end of April, 2013, a computer invoice was generated to the

13 debtor is being one of well over 60,000 invoices generated by

14 computer as debtor remained in the system as an active

15 customer."  What does -- that seems to me to indicate that if

16 you remain in a system as an active customer, you're going to

17 continue to get these invoices for prepetition bills.

18 A    You will get a statement until such a time which is

19 determined that you no longer wish to be a customer.  During

20 that period of time, we allow quite a bit of latitude --

21 because people in bankruptcy have a difficult time -- to make

22 that decision.  As long as that decision has not been made yet,

23 statements will be generated.  I don't know what 60,000 has to

24 do with it, I -- I -- we don't have 60,000 people in

25 bankruptcy, I don't --

1 Q    All right.  If we can move on to the Blacks, and I'm going

2 to -- I'm going to show you -- I'm going to provide to you what

3 your attorney provided in discovery because I think that this

4 might help you with dates and times, unless you know.  Do you

5 know what the date was that the tanks were taken form the

6 Blacks' case?

7 A    I don't have all this information off the top of my head,

8 no.

9 Q    Well, maybe -- does -- can we agree that when the tanks

10 were repossessed -- when the tanks were taken from the Blacks'

11 residence, that an employee of Heller's Gas went out to the

12 residence with instructions to either obtain payment or to

13 remove the tanks?

14 A    That -- our standard -- it could be -- to receive payment

15 for the gas remaining in the tank, not general statement like

16 you said, receive -- or -- just for what was in the tank.

17 Q    Okay.  The -- how do they know that?  How does the person

18 who goes out know how much gas is in the tank?

19 A    Well, there's different kinds of tanks, normally have a

20 meter on them, a gauge.  They're, you know -- different tanks

21 have different ways in making that determination.

22 Q    Isn't it true that for some tanks, the only way for you to

23 make that determination is to take the tank out?

24 A    Right.  And then what they do is they fill it, and

25 subtract the difference, and then you know what -- what was

1  there.

2  Q    So the Blacks, what kind of --

3  A    I'm sorry. I'm not a propane tech -- I can't tell you

4  which kind of tank they had.

5  Q    If you look at the -- at the records of the Blacks' case -

6  - of -- if you -- if you looked at some of the records that

7  have been produced in discovery, would you be able to --

8  A    I'm not a propane tech, I can't tell you how their tank

9  was configured.

10 Q    Do you know for certain whether the -- whether the person

11 who went out had instructions as to the dollar amount to obtain

12 for payment?

13 A    I -- I was not privy to what their marching orders were; I

14 don't know.

15 Q    Before the person went out, was a message left on -- on

16 the Blacks' answering device -- answering machine or voice

17 mail?

18 A    I have no knowledge of that.

19 Q    If --

20 A    I didn't -- I didn't leave a message for them.

21          MR. SABATINI:  May I approach, Your Honor?

22          THE COURT:  Oh, yeah.

23 BY MR. SABATINI:

24 Q    I'm showing you a document that was produced by your

25 attorney in discovery.  I -- could you please tell me whether

1 you recognize that?

2 A    This looks like a copy of our memo screen and our

3 computers at work.

4 Q    Okay.

5                              (Pause)

6 Q    So could you please tell me what happened on January 8th

7 at 9:13?

8 A    At 9:13?

9 Q    On January 8th, 2013, at 9:13 A.M., what happened?

10 A    Uh, well, the memo here indicates that on 9:13, uh, it

11 says, "L.M. for customer," that means -- shorthand for left

12 message, uh -- "need payment today on last delivery. B.R.Y.,"

13 and that would be the initials of our Effort store manager,

14 Barry Yokum.

15 Q    Right.  So can we agree that on that date at that time, a

16 message was left on the Blacks' answering machine demanding

17 payment on the gas that had been delivered before the

18 bankruptcy --

19 A    No.

20 Q    -- case was filed?

21 A    No, absolutely not.

22 Q    Why not?

23 A    Because it was all -- it was -- these memos were

24 shorthand.  It's the gas remaining in the tank, that's all that

25 was being asked for.

1  Q    How would she know that?

2  A    (No verbal response)

3  Q    How would she know how much needed to be paid?  I -- I --

4  A    I don't know what was the contents of this message.

5  Obviously if he left her a five-minute message, I could leave

6  someone a lengthy message and just-- the memo will say "left

7  message on voice mail."

8  Q    When's the last time before that that a tech had been out

9  to the house?

10  A    I have no idea.

11  Q    So how could someone leave a message -- are you saying the

12  message would have demanded a specific balance that accounted

13  for the amount of gas that was in the tank at the time the

14  message was being left?

15  A    I -- no, I'm not saying that.  I'm saying I can't

16  determine from this brief memo the specifics of that message.

17  I'm not Barry, I don't -- I didn't make the call.

18  Q    All right.  Would you agree that that message was left

19  before the person actually went out to her house to pick up the

20  tanks?

21  A    Yes.

22  Q    All right.  And then if you -- if you look at the next --

23                          (Pause)

24  Q    Then later that day, the tanks were picked up.

25  A    Yes.

1  Q    And the -- and the tech who went out to pick up the tanks

2  asked for payment before he took the tanks, right?

3  A    I wasn't there, I don't know.  If it's in the memos, I

4  mean I don't dispute it.  But obviously I wasn't there.

5        MR. SABATINI:  I have no further questions, Your

6  Honor.

7        THE COURT:  Cross?

8                    CROSS-EXAMINATION

9  BY MR. SCHAUB:

10 Q    Let's just start where -- where we just left off.  So

11 based on the information that you've looked at regarding the

12 Blacks, the bankruptcy --

13        THE COURT:  I'll tell you what, I'll let you switch

14 places here if you want.

15        MR. SCHAUB:  I'll stay here, Judge, I'm okay.  I'm

16 fine.

17        THE COURT:  You can move to any mic.

18        MR. SCHAUB:  I apologize --

19        THE COURT:  No, no.

20        MR. SCHAUB:  -- to the recorder -- to the reporter.

21 BY MR. SCHAUB:

22 Q    Uh, so just -- just so we understand, in November, the

23 Blacks had filed for bankruptcy, is that correct?

24 A    If that's what the records indicate, I agree.

25 Q    Okay.  Well, let's look at -- now this was --

1        MR. SCHAUB:  Judge -- this is awkward because you

2   don't have it and I -- I don't have a copy to give you.

3        THE COURT:  Well, I don't know what you're referring

4   to.

5        MR. SCHAUB:  I know.  I know you don't, and you need

6   to because now Mr. Sabatini has used it.  He hasn't marked it,

7   hasn't given it to you, um, so it's awkward for me to try and

8   use it now, which I need to do.  So I apologize for that

9   inconvenience.

10                          (Pause)

11       MR. SCHAUB:  So I'll mark this, Judge -- I will mark

12  this as Defendant's Exhibit 1.

13       THE COURT:  Which is -- are you going to have the

14  witness identify it or what?

15       MR. SCHAUB:  I will, Judge.

16       THE COURT:  Okay.

17  BY MR. SCHAUB:

18  Q   Mr. Gordon, is that the document that Mr. Sabatini was

19  just asking you about?

20  A   It's a -- actually it was the second page that he directed

21  my attention to, but it's the same thing.  It's a computer, uh,

22  copy of our memo screen on the account.

23  Q   For the Blacks?

24  A   That's correct, for the Blacks.

25  Q   Okay.  And -- and when you say a memo screen, just

1  describe that for the Judge.

2  A    Uh, we have various screens for on our computer for each

3  account.  The memo screen is where we go in and put a brief

4  description of activity in an account, or phone calls, or other

5  matters relating to the account.

6           MR. SCHAUB:  Judge, may I approach?

7           THE COURT:  Yes.

8  BY MR. SCHAUB:

9  Q    Now, Mr. Gordon, before we just talk about that briefly,

10 could you just explain to the Judge, when Heller's Gas receives

11 notice of a bankruptcy, is it Heller's intent to try to

12 continue to work with the customer?

13 A    Yes.

14 Q    And why is that?

15 A    Uh, well, to provide him propane, for us to have business,

16 and actually that happens quite a bit.

17 Q    Is -- are you generally successful with those efforts?

18 A    Yes.  Yes.

19 Q    And you have -- can you tell the Judge, do you have

20 specific policies in place in dealing with the bankruptcies?

21 A    Yes, we do.

22 Q    And did you describe those for the Judge generally?

23 A    I did.  I think -- and it's been interspersed between

24 other testimony, so I won't bore the Judge more with it.

25 Q    So does the screen shot, Exhibit 1, reflect when the --

1 | when Heller's received notice of the Black bankruptcy?

2 | A    Uh, it says "Customer filing for bankruptcy.  His attorney

3 | called our office."  And that is notated as of January 9th,

4 | 2013.

5 | Q    Go back to the first page of that exhibit, the third

6 | entry, is there an entry for 11/14/2012?

7 | A    Yes, there is.

8 | Q    Okay.  And are there any entries -- is that when Heller's

9 | received notice of the bankruptcy?

10 | A    That -- that would be -- generally that'd be the same day

11 | it's recorded, but it -- it -- it says, "Chapter 13 notice

12 | received, C.O.D. going forward, B.Y."  Once again, that B.Y. is

13 | Barry Yokum, our manager at the Effort store.

14 | Q    And between November 14th and January 8th, did the Blacks,

15 | or their lawyer, attempt to make any effort to try and deal

16 | with continuing to do business with Heller's Gas?

17 | A    Uh --

18 | Q    Is there any notation about that?

19 | A    I don't see anything, no.

20 | Q    And be -- after November 14th, not having received any

21 | communication regarding possibly wanting to continue doing

22 | business, did Heller's Gas send out any invoices for the gas

23 | that had been previously delivered and used by the Blacks?

24 | A    No.

25 | Q    And then in -- do you try to give a reasonable period of

1  time to the customer to try and make those arrangements with

2  regard to either continuing to do business or make some other

3  arrangements?

4  A    Yes, we do.  And to be honest with you, I can't give you a

5  hard and fast ten-day, 30-day, because everybody has unique

6  circumstance, so we try to work with them.

7  Q    And sometimes as much as two months?

8  A    Oh, absolutely.  Even longer sometimes.

9  Q    All right.

10 A    It just depends --

11 Q    And then --

12 A    -- on what's going on in their life.

13 Q    I won't repeat the testimony, I don't want -- I know -- I

14 don't want to burden the Judge, he heard what you said about --

15 about what a -- what a screen shot may or may not mean.  But

16 all I want to ask you is whatever was said by the technician at

17 -- on the voice mail or whatever was said by the technician

18 when he went to the home of the Blacks, did you speak with Mr.

19 Sabatini that day?

20 A    Yes.

21 Q    And what did you tell -- what did Mr. Sabatini ask you in

22 terms of the Blacks continuing to do business with Heller's?

23 A    Well, what he wanted -- the primary reason of the call, as

24 I understood it, was he wanted the tanks returned.

25 Q    Okay.  All right.  Did you make clear to Mr. Sabatini --

1        MR. SCHAUB:  Strike that.

2 BY MR. SCHAUB:

3 Q    What did you tell Mr. Sabatini were the terms by which the

4 Blacks could continue to do business with Heller's Gas?

5 A    The same as what our people would be instructed and our

6 managers are, which is they would have to pay us for the gas

7 remaining in the tank, all the gas already used would before

8 the bankruptcy, we had no intention to try to recover that or

9 bill for it.  If they want to continue to be our customer,

10 after that is settled with the payment, they would have to pay

11 C.O.D. going forward, which is, you know, like it happens all

12 the time, frequently.  So --

13 Q    Did you --

14 A    And, of course, that is the same thing as this because

15 it's in the context of the previous memo from Barry where he

16 says, you know, C.O.D. going forward.

17 Q    I'll do my best not to repeat, but I just want to be

18 clear.  With regard to the Reed account --

19                          (Pause)

20        MR. SCHAUB:  Judge, I'm going to mark as Defendant's

21 Exhibit 2 a series of e-mails that are identical to --

22                          (Pause)

23        MR. SCHAUB:  That were included as what I think was

24 Plaintiff's Exhibit 1 or Exhibit A, which I think were a series

25 of e-mails which began April 22nd, and then continued through

1  April 25th.  And what I'm doing, Judge, is I am supplementing

2  those e-mails because those e-mails between Mr. Harmon and Mr.

3  Sabatini continued until April 30th.  And I think it's very

4  important for the Court to see those e-mails, as well.  So that

5  would be Defendant's Exhibit 2.

6  BY MR. SCHAUB:

7  Q   So just with respect to your testimony, upon learning of

8  the Reed's bankruptcy, what was your understanding as to both

9  the Reed and Mr. Sabatini's intentions in terms of trying to

10 continue with the Reeds as a customer of Heller's?

11 A   My understanding from -- from the conversations and the e-

12 mails and everything, the context was that Mr. Reed wanted to

13 continue as our customer.  That he was even unaware that we

14 were named in the bankruptcy.  And when he -- he said he had to

15 get in touch with his attorney about that; I never heard the

16 resolution of that.  And wanted to know what needed to be done

17 to facilitate that process.

18 Q   Are you referring to Mr. Reed's e-mail to Kevin Harmon,

19 Carlo Sabatini, Mary Peters, and Stacy Williams of April 22nd?

20 A   Yes.

21 Q   Just read that into the record, please?

22 A   This is from Mr. Reed, Robert Reed, Monday, April 22nd,

23 2013 to Kevin Harmon, Carlo Sabatini, Mary Peters, and Stacy

24 Williams, "I will be in on Friday, my day off.  Sorry this

25 happened.  I was not aware utilities could be included.  I

1 forwarded this to the lawyer, an associate for them, to let me

2 know how to handle this.  Sorry, Kevin.  Bobby Reed."

3 Q    And as of April 30th, did Mr. Sabatini ever tell you that

4 Heller's was -- the Blacks were not -- I'm sorry.

5 A    Reeds.

6 Q    That the Reeds were not interested in continuing to do

7 business?

8 A    That -- that was never resolved as a finality to me.

9 Q    And if you had -- if Heller's had been advised that the

10 Reeds did not want to continue to do business with Heller's,

11 would you have sent any statements out?

12 A    No, absolutely not.  Once -- once there's a finality on

13 that issue, no further statement should be sent out or is sent

14 out.

15 Q    And were the statements that were sent out informative?

16 A    Yes.

17 Q    Intended to inform Mr. Sabatini and --

18 A    Right.

19 Q    -- the -- and the Reeds as to what would be needed to

20 continue to do business?

21 A    Right, he asked us for it, so we provided it.

22 Q    Did there come a time when the Reeds did advise that they

23 no longer wanted to be a customer of Heller's?

24 A    They called the store and asked that the tank be picked

25 up.

1  Q    Was there any gas in the tank?

2  A    No, I think it was all used at that point.

3  Q    Did you go and pick up the tank?

4  A    Yes, we did.

5  Q    And were any further invoices sent out --

6  A    No.

7  Q    Let me finish the question.

8  A    I'm sorry.

9  Q    Were any further invoice -- once the Reeds instructed you

10 to come get the tanks and the tanks were picked up, did

11 Heller's send out any invoices?

12 A    No.

13            MR. SCHAUB:  That's all I have, Judge.

14            THE COURT:  Any redirect?

15            MR. SABATINI:  Just very briefly.

16                    REDIRECT EXAMINATION

17 BY MR. SABATINI:

18 Q    You said -- regarding Reed, you said "he asked us for"

19 referring -- excuse me -- referring to monthly statement.  I

20 just want to be clear.  You testified earlier that I had not

21 asked for you to continue sending monthly statements to Mr.

22 Reed.  And instead, I think I understood your testimony to be

23 that in the context here, I had asked you for a statement

24 regarding what had been provided to Mr. Reed as of the time the

25 bankruptcy case was filed, is that fair?

1  A    I don't think I understand your question.  I'm sorry.
2  Would you rephrase it?
3  Q    All right.  Did I ask you for a statement of what had been
4  sent to Mr. Reed as of the time the bankruptcy case had been
5  filed?
6  A    You didn't ask me for a statement.
7  Q    Did I ask Heller's for a statement of what had been sent
8  to -- of -- of what gas had been provided to Mr. Reed as of the
9  time the bankruptcy case had been filed?
10 A    I can only speak to myself, unless there's some other
11 evidence I can authenticate; you didn't ask me.  I can only --
12 Q    All right.  So to your knowledge, did I ever ask Heller's
13 to provide any statements?
14 A    I don't know how to try to make this any clearer for you.
15 You didn't ask me.  I don't know of any other document.  If you
16 have some other documentation that indicates otherwise, I'd be
17 glad to look at it for you.
18 Q    No, no, that's --
19         THE COURT:  Well, you know what, just answer the
20 question.  Did -- are you aware of any request by Mr.
21 Sabatini --
22         THE WITNESS:  No, that's what I said.
23         THE COURT:  Just a second.
24         THE WITNESS:  Uh.
25         THE COURT:  Are you aware of any request made by Mr.

1  Sabatini to Heller's for a balance or a statement?  Are you

2  aware of it?

3          THE WITNESS:  No.

4          THE COURT:  Okay.

5          MR. SABATINI:  Thank you.

6  BY MR. SABATINI:

7  Q    One other topic.  On Blacks, you said that I called in

8  because I wanted the tanks returned.  And I know this was a

9  while ago, and I'm sure that you didn't intentionally say

10  something that was not accurate.  Would it be more accurate to

11  say that I called in before the tanks were actually taken, and

12  that Mrs. Black was on the phone with us, that we had a

13  conversation while your technician was there, and that I was

14  asking you to please not take the tanks?

15  A    I -- I have -- I don't know where the tank was during the

16  time we were speaking.  If -- if they were on the truck, being

17  unhooked, I don't know.  But if you have a better memory of

18  that than I do, I'll defer to your memory of it, you know.  But

19  I do know that after the tanks were out, you called me and

20  wanted them returned.

21  Q    That's correct.

22  A    And if I've -- if I have conflated those calls, I

23  apologize.

24          MR. SABATINI:  Nothing further, Your Honor.

25          THE COURT:  Anything else?

1        MR. SCHAUB:  Just a follow-up, Judge, briefly on

2 that.

3                    RECROSS EXAMINATION

4 BY MR. SCHAUB:

5 Q    With regard to the Reed matter and the communications

6 with Mr. Sabatini in late April, leading up to the whole issue

7 of continuing -- reaffirmation of the debt --

8 A    Right.

9 Q    -- and continuing to do business with -- with Heller's

10 Gas, attached to the amended complaint --

11        MR. SCHAUB:  Which I think is Exhibit C, Judge.  I

12 think it's the one -- it's a one-page document captioned, "Back

13 Mountain Gas.  Amount $82.62."

14 BY MR. SCHAUB:

15 Q    To the best of your knowledge, was that document faxed to

16 Mr. Sabatini on April 30th --

17 A    I think it was.

18 Q    -- of 2013?

19 A    I think it was.

20 Q    Okay.  And is that invoice informational in terms of the

21 value of the gas, propane in tank?

22 A    Right.

23 Q    Propane in tank --

24 A    Yes.

25 Q    -- that's what it says, right?

1  A    Yes.

2  Q    And it's $82.62, correct?

3  A    Yes.

4  Q    And --

5  A    Yes.

6  Q    -- that was informational for Mr. Sabatini.

7  A    Right.

8  Q    And in terms of the invoice which has been marked now as

9  P-E, and that was April 30th, and that has gas in tank, $82.62,

10 and that's also informational, correct?

11 A    That's correct.

12        MR. SCHAUB:  That's all I have, Judge.

13      (Whereupon, at 1:25 P.M., the requested portion to be

14                  transcribed concluded.)

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4    <u>CERTIFICATE OF TRANSCRIBER</u>

5

6        I, KAREN HARTMANN, a certified Electronic Court

7    Transcriber, certify that the foregoing is a correct transcript

8    from the electronic sound recording of the proceedings in the

9    above-entitled matter.

10

11

12

13   Karen Hartmann, AAERT CET**D0475 Date:  September 18, 2014

14   TRANSCRIPTS PLUS, INC.

15

16

17

18

19

20

21

22

23

24

25

**$**

**$230.04–** 17:23
**$75–** 19:5
**$82.62–** 21:20
25:23 46:13 47:2,
9

**\***

**\*\*\*\*–** 3:3

**1**

**1–** 36:12 37:25
40:24
**100–** 7:23 10:21
12:2
**11/14/2012–** 38:6
**11:30–** 3:1
**12:31–** 3:3
**13–** 38:11
**14TH–** 38:14,20
**18–** 14:19 20:12,
19,25 21:1 22:6
48:17
**1:25–** 47:13

**2**

**2–** 40:21 41:5
**2013–** 15:17
22:14 23:4 30:2,
12 33:9 38:4
41:23 46:18
**2014–** 48:17
**21–** 29:14
**22ND–** 40:25
41:19,22
**23–** 16:19
**232.04–** 26:11
**232.64–** 22:8
**24–** 16:20
**251–** 26:3,5
**251.97–** 22:15
23:5,7 24:2,13,
16,22 25:11,20
**25TH–** 41:1

**3**

**30–** 10:1,11,25
13:5,6
**30-DAY–** 39:5
**30TH–** 15:17
22:14 23:4 41:3
42:3 46:16 47:9

**6**

**60,000–** 30:4,13,

23,24

**8**

**8–** 29:11
**82.62–** 19:8
20:14,15 23:12,
15 26:6
**8TH–** 33:6,9 38:14

**9**

**99–** 12:3
**99.5–** 12:3
**9:13–** 33:7,8,9,10
**9TH–** 38:3

**A**

**ABLE–** 32:7
**ABSOLUTELY–**
11:13 12:17
28:15 33:21 39:8
42:12
**ACCOMPANIES–** 9:24
**ACCORDING–** 27:8
**ACCOUNT–** 5:13
7:13 15:13 17:16
19:1,6 36:22
37:3,4,5 40:18
**ACCOUNTED–** 34:12
**ACCOUNTING–** 11:1
**ACCOUNTS–** 4:7
5:4,6 6:21
**ACCURATE–** 7:23
18:23 45:10
**ACTION–** 15:6
**ACTIVE–** 28:19,23
30:5,14,16
**ACTIVITY–** 37:4
**ACTUAL–** 23:14
**AD–** 6:9
**ADEQUATE–** 30:6
**ADMITTED–** 16:20
**ADVANCED–** 9:7
**ADVISE–** 42:22
**ADVISED–** 42:9
**AGAINST–** 19:19
**AGREE–** 4:2,5
24:2 31:9 33:15
34:18 35:24
**AGREED–** 16:18
**ALLEGATIONS–** 9:7
16:19
**ALLOW–** 22:19
30:20
**AMENDED–** 29:13
46:10
**AMOUNT–** 10:24

18:11,20,22
19:13 20:15,17,
24 21:16,24 22:1,
2,6 24:3,20
32:11 34:13 46:13
**AMOUNTS–** 17:20
**ANNUM–** 14:19
**ANSWER–** 8:4 9:1,
20 10:6,8 21:23
22:5 24:23,24
29:11,14,16 44:19
**ANSWERING–** 29:18
32:16 33:16
**ANSWERS–** 26:13
**ANYWAY–** 29:21
**APOLOGIZE–** 20:11
35:18 36:8 45:23
**APOLOGIZED–** 16:6
**APPRECIATE–** 26:19
29:8 32:21 37:6
**APRIL–** 15:17
22:14 23:4 30:2,
6,12 40:25 41:1,
3,19,22 42:3
46:6,16 47:9
**ARGUING–** 9:3
**ARGUMENTS–** 9:5
**ARISES–** 6:16
**ARRANGEMENTS–**
39:1,3
**ASSOCIATE–** 42:1
**ASSUMING–** 8:10
**ASSURANCE–** 30:7
**ATTACHED–** 46:10
**ATTEMPT–** 38:15
**ATTENTION–** 29:14
36:21
**ATTORNEY–** 3:20
4:4 7:18 23:11
29:12 31:3 32:25
38:2 41:15
**AUTHENTICATE–**
44:11
**AWARE–** 6:23 7:15
41:25 44:20,25
45:2
**AWKWARD–** 36:1,7

**B**

**BACK–** 3:18 11:3,
21 12:3 15:25
16:2,3,8 17:16
38:5 46:12
**BALANCE–** 17:23
18:1,6,14,18,22,

25 21:16 22:3
24:20 26:11
34:12 45:1
**BANKRUPTCIES–**
37:20
**BANKRUPTCY–** 4:8
5:6,8,10 6:21
7:8,13 14:25
15:5,18 16:4
19:22,23,25 27:5,
8 28:13,17,18
30:21,25 33:18
35:12,23 37:11
38:1,2,9 40:8
41:8,14 43:25
44:4,9
**BANKRUPTCY'S–**
27:12
**BARRY–** 33:14
34:17 38:13 40:15
**BASE–** 15:11
**BASED–** 24:25
25:14 35:11
**BASING–** 8:12
**BEFOREHAND–** 8:18
**BEGAN–** 40:25
**BENEFIT–** 9:23
**BETWEEN–** 23:16
30:8 37:23 38:14
41:2
**BICKER–** 22:4
**BILL–** 9:24 10:1,
11 15:17 22:18,
25 23:6,10,12,14
24:19 40:9
**BILLED–** 24:20,21
**BILLING–** 30:2
**BILLS–** 28:20
30:17
**BIT–** 30:20 37:16
**BLACK–** 15:25
38:1 45:12
**BLACKS–** 31:1
32:2 35:12,23
36:23,24 38:14,
23 39:18,22 40:4
42:4 45:7
**BLACKS'–** 31:6,10
32:5,16 33:16
**BOBBY–** 42:2
**BOOK–** 5:25
**BORE–** 37:24
**BOTH–** 4:7 24:21
41:8
**BRIEF–** 34:16 37:3
**BRIEFS–** 5:3

**B.R.Y.-** 33:12
**BURDEN-** 39:14
**BURNS-** 13:10
**BUSINESS-** 10:13,
14 30:3 37:15
38:16,22 39:2,22
40:4 42:7,10,20
46:9

---
C
---

**CABIN-** 10:21
**CALCULATED-**
10:16 21:12 23:6
**CALL-** 11:3,19,21
25:1,2 34:17
39:23
**CALLED-** 38:3
42:24 45:7,11,19
**CALLING-** 15:11
**CALLS-** 37:4 45:22
**CAN-** 9:4,8 22:5,
7,11 23:18,22
24:23 31:1,9
33:15 35:17
37:19 44:10,11
**CAN'T-** 32:3,8
34:15 39:4
**CAPTIONED-** 46:12
**CAR-** 10:14
**CARD-** 19:5
**CARLO-** 41:19,23
**CASE-** 5:6 6:18
7:13 9:3 12:12
13:17 17:3,7
19:23,25 28:13,
17,24 29:3,13
31:6 32:5 33:20
43:25 44:4,9
**CASES-** 12:12
**CERTAIN-** 32:10
**CERTAINLY-** 8:4
**CERTIFICATE-** 48:5
**CERTIFIED-** 48:7
**CERTIFY-** 48:8
**CHAPTER-** 38:11
**CHARACTERIZATION-**
20:3,4
**CHARGE-** 12:4,6,7
13:4,17,23 18:7
23:9
**CHOOSE-** 14:7,9
**CIRCUMSTANCE-**
39:6
**CIRCUMSTANCES-**
11:25
**CLAIMING-** 22:2

24:3
**CLAIMS-** 18:20
**CLARIFICATION-**
5:17 9:19 13:7
18:10
**CLARIFY-** 7:24
9:21 22:11 23:17
**CLEAR-** 7:15
10:20 16:11
23:10 24:7 25:9
39:25 40:18 43:20
**CLEARER-** 44:14
**CLEARLY-** 8:18
22:5 27:15
**COD-** 27:11 28:21
29:5 38:12 40:11,
16
**COLLECT-** 4:7
5:13 6:21 7:13
15:6
**COLLECTED-** 5:6
**COLLECTIONS-** 3:14
**COLLOQUY-** 7:18
**COME-** 11:3 42:22
43:10
**COMES-** 5:17,25
6:9 18:11
**COMMENCED-** 3:1
**COMMENCING-** 3:2
**COMMUNICATION-**
23:11 38:21
**COMMUNICATIONS-**
46:5
**COMPANY-** 9:16
12:11
**COMPANY'S-** 18:6
**COMPETENT-** 4:4
**COMPILED-** 5:24
**COMPLAINT-** 16:19
17:2 29:12,13
46:10
**COMPLETELY-** 7:23
**COMPLY-** 15:14
**COMPONENT-** 24:22
25:20 26:8,12
**COMPONENTS-** 22:18
**COMPUTER-** 30:3,5,
12,14 36:21 37:2
**COMPUTERS-** 33:3
**CONCERNS-** 9:6
**CONCLUDED-** 47:14
**CONCLUDING-** 3:3
**CONCLUSIONS-** 9:3,
4
**CONDITIONAL-**
10:15

**CONDITIONS-** 10:12
**CONFIGURED-** 32:9
**CONFLATED-** 45:22
**CONSUMED-** 19:2
**CONTENTS-** 34:4
**CONTEXT-** 15:19
16:14 21:19 27:1,
3,7 29:18 30:10
40:15 41:12 43:23
**CONTINGENCY-**
27:13
**CONTINUE-** 16:9
23:15 27:9 28:2,
5,25 30:17 37:12
38:21 40:4,9
41:10,13 42:10,
20 43:21
**CONTINUED-** 28:14
40:25 41:3
**CONTINUING-** 16:6
27:7 38:16 39:2,
22 42:6 46:7,9
**CONTRACTUALLY-**
13:23
**CONVERSATION-**
27:15,18,19 45:13
**CONVERSATIONS-**
24:25 25:15 27:3
41:11
**COPY-** 17:2,5
33:2 36:2,22
**CORPORATE-** 12:20
**CORRECT-** 13:18
14:12 16:21
17:22 18:5 21:4,
9,15 26:1 27:11
28:7 29:16 35:23
36:24 45:21 47:2,
10,11 48:8
**CORRECTLY-** 19:11
**COUNSEL-** 30:8,9
**COUNT-** 24:16,18
**COUNTED-** 25:23
26:1
**COUNTS-** 24:2,6,14
**COURSE-** 5:2 12:9
19:18 28:1 30:2
40:14
**COURTROOM-** 7:17
**CREATE-** 4:19
**CREATED-** 22:20
**CREDIT-** 15:12
19:5 27:11
**CREDITED-** 19:5,18
**CROSS-** 35:7
**CROSS-**
**EXAMINATION-** 35:8

**CURRENT-** 18:22
**CUSTOMER-** 10:17
15:15,25 25:2
27:6,7 28:23
30:6,15,16,19
33:11 37:12 38:2
39:1 40:9 41:10,
13 42:23
**CUSTOMER-OWNED-**
14:24 15:2,9,10
**CUSTOMERS-** 28:2,
19,20
**CYCLE-** 30:2

---
D
---

**DATE-** 21:2,13,14
31:5 33:15 48:17
**DATE'S-** 23:4
**DATED-** 22:14
**DATES-** 31:4
**DAY-** 13:13 19:14
34:24 38:10
39:19 41:24
**DAYS-** 10:1,11,25
13:5,6
**DEAL-** 38:15
**DEALING-** 37:20
**DEATH-** 13:10
**DEBT-** 15:20,23
46:7
**DEBTOR-** 30:4,5,9,
13,14
**DEBTOR'S-** 30:7
**DEBTORS-** 28:18
**DECIDE-** 10:22
14:3
**DECIDED-** 11:3
15:11
**DECISION-** 14:6
28:3,4 30:22
**DEFENDANT-** 16:20
30:8
**DEFENDANT'S-**
36:12 40:20 41:5
**DEFER-** 45:18
**DEFINE-** 9:17
**DELIVER-** 9:24
11:6,14
**DELIVERED-** 18:2,
3,7,21 19:11,14,
22 21:12,22 23:8
28:22 33:17 38:23
**DELIVERIES-**
19:24 20:2
**DELIVERY-** 18:24

19:2,25 21:2
22:5,6,7 33:12
**DEMAND-** 20:5,8
25:12
**DEMANDED-** 34:12
**DEMANDING-** 33:16
**DENIED-** 30:1
**DEPEND-** 12:23
**DEPENDS-** 39:10
**DESCRIBE-** 6:21
7:11 37:1,22
**DESCRIPTION-**
17:21 20:24 37:4
**DETERMINATION-**
31:21,23
**DETERMINE-** 34:16
**DETERMINED-** 30:19
**DEVICE-** 32:16
**DIDN'T-** 8:17
15:5 16:4 25:24
27:22 32:20
34:17 44:6,11,15
45:9
**DIFFERENCE-** 31:25
**DIFFERENT-** 31:19,
20,21
**DIFFICULT-** 9:15
30:21
**DIME-** 11:19,20,
23,24
**DIRECTED-** 36:20
**DISAGREE-** 20:3
**DISCOVERY-** 31:3
32:7,25
**DISCRETION-** 13:16
**DISCRETIONARY-**
13:22
**DISCUSSED-** 7:20
**DISINGENUOUS-**
7:25 8:7
**DISMISSED-** 27:12
**DISPUTE-** 35:4
**DISTRIBUTION-**
11:1
**DOCKET-** 29:11
**DOCUMENT-** 17:4
24:25 29:11
32:24 36:18
44:15 46:12,15
**DOCUMENTATION-**
44:16
**DOCUMENTATIONS-**
25:14
**DOESN'T-** 8:19
15:1 22:1 26:5,14
**DOLLAR-** 17:20

20:15,17 21:24
22:1,6,8 32:11
**DOUBLE-** 24:2,6,
13,16,18
**DRIVER-** 12:9
**DUE-** 10:1,11,25
18:12 22:2,15
23:5
**DUPLICATING-** 22:2

E
**EACH-** 17:19 37:2
**EARLIER-** 7:17
19:20 43:20
**EFFECT-** 23:16
**EFFORT-** 33:13
38:13,15
**EFFORTS-** 37:17
**ELABORATE-** 27:4
**ELECTRONIC-** 6:7,
20 48:7,9
**EMAIL-** 5:18 41:18
**EMAILS-** 6:10
16:8 23:16 27:17
40:21,25 41:2,4
**EMPLOYEE-** 31:11
**ENFORCED-** 13:9
**ENTERED-** 9:2
**ENTIRE-** 10:24
**ENTRIES-** 38:8
**ENTRY-** 38:6
**ERASE-** 14:10
**ESTABLISHED-**
27:11
**EUROPE-** 10:22
11:4 14:23
**EVERYBODY-** 39:5
**EVERYTHING-** 7:20
14:24 23:14 41:12
**EVIDENCE-** 44:11
**EXACTLY-** 11:11
**EXAMINATION-**
3:11 43:16 46:3
**EXAMPLE-** 10:18
**EXCHANGE-** 6:10
27:17
**EXCUSE-** 43:19
**EXERCISE-** 13:16
**EXHIBIT-** 17:3,9,
11 22:13 36:12
37:25 38:5 40:21,
24 41:5 46:11
**EXPECT-** 9:13
**EXPEDITE-** 25:7
**EXPENSES-** 12:10
**EXPLAIN-** 8:17

9:15 29:24 37:10
**EXTENUATING-**
11:25

F
**FACILITATE-** 41:17
**FACTUAL-** 9:5,6
**FAIR-** 9:9 22:20
26:16 43:25
**FAMILY-** 13:10
**FAR-** 3:18
**FAST-** 39:5
**FAXED-** 46:15
**FEE-** 23:9
**FEEL-** 27:1
**FEES-** 12:8
**FIGURE-** 21:22
22:8 25:25
**FILE-** 5:10
**FILED-** 4:8 5:7
6:22 7:9,14 17:2
19:23 20:1 28:17,
24 29:3,12,13
33:20 35:23
43:25 44:5,9
**FILES-** 27:5 28:13
**FILING-** 15:19
38:2
**FILL-** 11:15
14:20 31:24
**FINALITY-** 42:8,12
**FINANCE-** 13:4
23:9
**FINE-** 10:7 23:25
35:16
**FIRST-** 17:12,13
30:11 38:5
**FIVE-** 3:16
**FIVE-MINUTE-** 34:5
**FOLLOW-** 23:22
**FOLLOWS-** 4:7
**FOLLOW-UP-** 23:18
46:1
**FOREGOING-** 48:8
**FORGETTING-** 6:15
**FORM-** 5:20 31:5
**FORMAL-** 6:11
**FORMULATING-** 4:6,
9,13
**FORMULATION-** 4:11
**FORTH-** 16:8
**FORWARD-** 17:23
18:1,6,14,18,25
21:17 22:3 24:21
27:11 29:5 38:12
40:11,16

**FORWARDED-** 42:1
**FRAME-** 9:8
**FREE-** 24:13 27:1
**FREQUENTLY-** 40:12
**FRIDAY-** 41:24
**FRONT-** 22:13
**FURTHER-** 9:18
30:1 35:5 42:13
43:5,9 45:24

G
**GALLON-** 10:21
**GALLONS-** 12:2
20:12,19 22:6
**GARDNER-** 4:16,19
**GAS-** 3:14,15 4:7
9:14,22 15:7,16
19:8,11,14,21,22
20:14,25 21:11,
13,20 22:2 23:12
24:3,9,19 27:10
31:11,15,18
33:17,24 34:13
37:10 38:16,22
40:4,6,7 43:1
44:8 46:10,13,21
47:9
**GAUGE-** 31:20
**GENERAL-** 31:15
**GENERALLY-** 28:14,
18 37:17,22 38:10
**GENERATED-** 30:3,
4,12,13,23
**GET-** 11:2 12:2,9
25:6 28:16 30:17,
18 41:15 43:10
**GIVE-** 10:18
11:19 27:6 30:10
36:2 38:25 39:4
**GIVEN-** 27:5 36:7
**GLAD-** 44:17
**GO-** 3:19 10:22,
23 17:18 37:3
38:5 43:3
**GOING-** 6:8 8:25
10:22 11:3 12:9
13:17 24:10,12
27:11 28:5 29:5,
6 30:16 31:1,2
36:13 38:12
39:12 40:11,16,20
**GOODS-** 11:1
**GORDON-** 3:2,4,7,
13 24:7 36:18
37:9
**GOT-** 9:6

**GUESS-** 22:14 23:2
**GUIDE-** 5:19,20

### H
**HALF-** 12:25 13:1 14:17,18
**HANDBOOK-** 5:14
**HANDLE-** 42:2
**HAPPEN-** 15:13,14
**HAPPENED-** 18:13 33:6,9 41:25
**HAPPENS-** 11:20 14:23 37:16 40:11
**HARD-** 39:5
**HARDSHIP-** 12:12 13:9,17
**HARDSHIPS-** 14:4
**HARMON-** 12:19 41:2,18,23
**HASN'T-** 18:13 36:6,7
**HAVEN'T-** 20:8
**HE'S-** 24:6
**HEAD-** 31:7
**HEAR-** 7:20 9:13
**HEARD-** 7:21 8:12, 15,18 9:15 39:14 41:15
**HELLER'S-** 3:14, 15 4:7 9:22 15:16 18:20 31:11 37:10,11 38:1,8,16,22 39:22 40:4 41:10 42:4,9,10,23 43:11 44:7,12 45:1 46:9
**HELP-** 19:20 31:4
**HELPFUL-** 8:3 10:19 22:9
**HERE'S-** 24:23
**HESITATE-** 26:17
**HIRED-** 4:24
**HOC-** 6:9
**HOME-** 39:18
**HONEST-** 39:4
**HONING-** 8:20
**HOPEFULLY-** 15:14
**HOPING-** 30:10
**HOUSE-** 13:10 34:9,19

### I
**IDEA-** 34:10
**IDENTICAL-** 40:21
**IDENTIFIED-** 22:15

**IDENTIFIES-** 24:8, 9
**IDENTIFY-** 22:18 23:5 36:14
**IMPLEMENTING-** 4:10
**IMPLY-** 8:5
**IMPORTANT-** 41:4
**INC-** 48:18
**INCONVENIENCE-** 36:9
**INCUR-** 12:10
**INDICATES-** 33:10 44:16
**INFORM-** 42:17
**INFORMATION-** 8:9 24:8 28:2 31:7 35:11
**INFORMATIONAL-** 23:13 46:20 47:6, 10
**INFORMATIVE-** 42:15
**INITIALS-** 33:13
**INPUT-** 4:11,20
**INSIST-** 13:13
**INSTALLATION-** 12:4
**INSTALLED-** 12:15
**INSTEAD-** 10:22 11:4 21:6,12 43:22
**INSTRUCTED-** 40:5 43:9
**INSTRUCTION-** 5:15
**INSTRUCTIONS-** 31:12 32:11
**INTENDED-** 42:17
**INTENT-** 37:11
**INTENTION-** 40:8
**INTENTIONALLY-** 45:9
**INTENTIONS-** 41:9
**INTEREST-** 12:6,7, 16 13:3,4,17,24 14:3,10,13,15,16
**INTERESTED-** 42:6
**INTERRUPT-** 10:5
**INTERSPERSED-** 37:23
**INVOICE-** 24:7 30:3,12 43:9 46:20 47:8
**INVOICES-** 30:4, 13,17 38:22 43:5, 11

**IRRESPECTIVE-** 18:21
**ISN'T-** 21:1 31:22
**ISSUE-** 5:17,25 6:10,16 8:20,21 28:1,8 42:13 46:6
**IT'D-** 10:18 12:23

### J
**JANUARY-** 33:6,9 38:3,14
**JUDGE-** 8:22 10:4 16:21 22:22 23:20,25 24:5 35:15 36:1,11,15 37:1,6,10,19,22, 24 39:14 40:20 41:1 43:13 46:1, 11 47:12
**JUNIOR-** 4:16

### K
**KEEPS-** 24:6
**KEVIN-** 41:18,23 42:2
**KINDS-** 31:19
**KNOWLEDGE-** 32:18 44:12 46:15

### L
**LATE-** 12:8 23:9 46:6
**LATER-** 34:24
**LATITUDE-** 30:20
**LAWFUL-** 14:11
**LAWYER-** 38:15 42:1
**LEADING-** 46:6
**LEARNING-** 41:7
**LEAVE-** 32:20 34:5,11
**LEFT-** 9:25 20:24 32:15 33:11,16 34:5,6,14,18 35:10
**LEGAL-** 9:2,4 14:16 15:6 30:8,9
**LENGTHY-** 34:6
**LET'S-** 25:4,6 35:10,25
**LEVEL-** 12:20,21
**LICENSED-** 3:20, 23 4:3
**LIGHT-** 12:1,13
**LINE-** 18:20 19:1, 3,4,7 20:12,22,

23 21:11,12,24 22:3
**LINES-** 17:19
**LM-** 33:11
**LOCATION-** 15:15
**LONG-** 3:15 14:11 30:22
**LONGER-** 4:3 30:19 39:8 42:23
**LOOK-** 32:5 34:22 35:25 44:17
**LOOKED-** 32:6 35:11
**LOOKING-** 24:19
**LOUD-** 29:15

### M
**MACHINE-** 32:16 33:16
**MAIL-** 9:25 32:17 34:7 39:17
**MAILS-** 41:12
**MAKING-** 31:21
**MANAGER-** 23:17 24:25 33:13 38:13
**MANAGERS-** 5:3 40:6
**MANUAL-** 5:15,19, 20
**MARCHING-** 32:13
**MARK-** 36:11 40:20
**MARKED-** 36:6 47:8
**MARY-** 41:19,23
**MATTER-** 11:1 12:11 15:2 46:5 48:10
**MATTERS-** 37:5
**MEANS-** 19:11,13 33:11
**MEASURED-** 21:7
**MEETING-** 5:18
**MEMO-** 33:2,10 34:6,16 36:22,25 37:3 40:15
**MEMORY-** 45:17,18
**MEMOS-** 33:23 35:3
**MERELY-** 23:13
**MESSAGE-** 32:15, 20 33:12,16 34:4, 5,6,7,11,12,14, 16,18
**METER-** 31:20
**MIC-** 35:17
**MINIMAL-** 12:2
**MIS-** 27:1
**MISREPRESENTING-**

16:1
**MISUNDERSTOOD-**
20:11
**MONDAY-** 41:22
**MONEY-** 15:4
**MONTH-** 14:17,18
**MONTHLY-** 27:21,
23,24 28:10,13,
17,25 43:19,21
**MONTHS-** 12:15,16
39:7
**MOUNTAIN-** 16:1,2,
3 17:16 46:13
**MOVE-** 14:23
15:11 31:1 35:17
**MUCH-** 4:1 12:23
19:11,16,17
23:13 31:18 34:3
39:7

---

N

---

**NAMED-** 41:14
**NECESSARY-** 9:19
**NEEDED-** 34:3
41:16 42:19
**NEGOTIATION-**
15:20,22
**NEVER-** 11:16,19,
20 28:6 41:15
42:8
**NEVERTHELESS-**
27:25
**NEW-** 15:15
**NORMALLY-** 31:19
**NOTATED-** 38:3
**NOTATION-** 38:18
**NOTICE-** 27:6
37:11 38:1,9,11
**NOVEMBER-** 35:22
38:14,20
**NUMBERS-** 20:22
24:21

---

O

---

**OBJECT-** 22:11
24:5 26:17
**OBJECTION-** 8:24,
25 23:19,21,24
24:12
**OBTAIN-** 31:12
32:11
**OBVIOUSLY-** 8:1,3
34:5 35:4
**OCCUPATION-** 3:13
**OCCUPY-** 11:16
**OFFENDED-** 26:22

**OFFICE-** 38:3
**ONE-** 7:1 11:8,16
14:4,16,18 30:4,
13 45:7 46:12
**ONE-PAGE-** 46:12
**ONGOING-** 13:12
15:19
**OPEN-** 28:9
**OPERATION-** 30:3
**OPERATIONS-** 15:12
**OPPORTUNITY-** 27:6
**OPTION-** 15:10
**ORALLY-** 25:9
**ORDER-** 28:21
**ORDERED-** 28:24
29:3
**ORDERING-** 3:2
**ORDERS-** 32:13
**ORDINARY-** 30:2
**ORIGINAL-** 21:22
22:7
**OTHERWISE-** 9:8
44:16
**OUNCE-** 11:16
**OVERALL-** 9:17
**OWE-** 11:4,23
12:3 15:4 25:3
**OWED-** 10:17
18:21 23:14 24:3
**OWN-** 10:14 15:7
**OWNERS-** 4:14
**OWNERSHIP-** 11:12,
15
**OWNS-** 14:20

---

P

---

**PACKAGE-** 9:17
**PAID-** 9:14 18:4
34:3
**PARSE-** 9:9
**PARTIAL-** 11:25
**PARTICULAR-** 5:17,
25 6:10,15,18
8:20,21 13:17
**PARTIES-** 16:18
19:21 23:11
**PARTY-** 3:2
**PAUL-** 4:16
**PAUSE-** 16:25
33:5 34:23 36:10
40:19,22
**PAY-** 12:25 13:1
15:5 16:9 27:8,
10 28:21 29:1,4
40:6,10
**PAYABLE-** 10:1,11,

25
**PAYMENT-** 10:15
19:5,18 20:5,8
21:19 22:14 23:5
31:12,14 32:12
33:12,17 35:2
40:10
**PE-** 47:9
**PENNSYLVANIA-**
3:21,24
**PEOPLE-** 5:3
28:20,21 30:21,
24 40:5
**PERCENT-** 7:23
14:17,18
**PERHAPS-** 22:18
**PERIOD-** 30:20
38:25
**PERPETUITY-** 14:25
**PERSON-** 6:24 8:9
28:25 31:17
32:10,15 34:19
**PERSON'S-** 5:13
**PETERS-** 41:19,23
**PETITION-** 30:7
**PHONE-** 37:4 45:12
**PHRASE-** 24:6
**PICK-** 10:23 11:4
34:19 35:1 43:3
**PICKED-** 34:24
42:24 43:10
**PILOT-** 12:1
**PLACE-** 4:23 37:20
**PLACES-** 35:14
**PLAINTIFF'S-** 3:4
40:24
**PM-** 3:3 47:13
**POLICIES-** 4:6,19,
25 5:5,12 37:20
**POLICY-** 5:8,16
6:11 7:15 9:16
12:11 13:13,14
27:9
**PORTION-** 13:5
47:13
**POSSIBILITY-**
16:5 28:9
**POST-** 15:18 30:7
**PRACTICE-** 3:20,
23 5:16 13:15
**PRE-FILING-** 20:5
23:8
**PREMISES-** 9:25
**PREPETITION-**
19:22 30:17
**PRESENTED-** 23:10

**PRESIDENT-** 3:14
4:14
**PREVIOUS-** 26:9
29:12 40:15
**PREVIOUSLY-**
24:20 38:23
**PRINCIPLE-** 16:14
**PRIVY-** 32:13
**PRO-** 20:5
**PROCEDURE-** 5:2
6:2,5
**PROCEDURES-** 4:7
5:5,12
**PROCEEDINGS-** 3:1
48:9
**PROCESS-** 25:7
41:17
**PRODUCED-** 32:7,24
**PROPANE-** 9:16,22,
24 10:13,15,21
11:15,17 12:8,14,
22 13:1 14:11,20,
21 15:12 18:2,3,
7,8,11,21 19:17
20:4,7 23:8
28:21,22,24 29:1,
4 32:3,8 37:15
46:21,23
**PROPERTY-** 11:6,
14,16
**PROTECTION-** 15:6
**PROVIDE-** 31:2
37:15 44:13
**PROVIDED-** 28:3
31:3 42:21 43:24
44:8
**PROVIDES-** 9:22
**PUC-** 10:13
**PUMP-** 15:12
**PURCHASED-** 11:10
**PURPOSES-** 9:23
**PURSUE-** 15:6

---

Q

---

**QUESTIONS-** 35:5

---

R

---

**RATE-** 14:13,15,16
**RE-** 6:23
**REAFFIRMATION-**
15:20,22 16:13
21:20 46:7
**REASON-** 4:2 39:23
**REASONABLE-** 38:25
**REASONS-** 4:1 13:8
**RECEIVABLE-** 5:4

RECEIVE- 28:20 31:14,16
RECEIVED- 38:1,9, 12,20
RECEIVES- 37:10
RECOGNIZE- 17:4 33:1
RECOGNIZED- 16:22
RECORDED- 38:11
RECORDER- 35:20
RECORDING- 48:9
RECORDS- 32:5,6 35:24
RECOVER- 40:8
RECROSS- 46:3
REDIRECT- 43:14, 16
REDUCED- 7:16
REED- 15:17,25 16:2,3,13,16 17:7 25:1 27:25 28:7,11 40:18 41:9,12,22 42:2 43:18,22,24 44:4, 8 46:5
REED'S- 41:8,18
REEDS- 41:10 42:5,6,10,19,22 43:9
REFERRING- 36:3 41:18 43:19
REFLECT- 37:25
REFLECTS- 19:16 20:4,7
REFUNDED- 10:24
REMAIN- 28:18,20 30:16
REMAINED- 21:13 30:5,14
REMAINING- 21:8, 20 23:12 27:10 31:15 33:24 40:7
REMAINS- 18:23 28:23 29:5
REMOVE- 31:13
REPORTER- 35:20
REPOSSESSED- 31:10
REPRESENTATION- 7:22
REPRESENTATIONS- 8:12
REPRESENTED- 22:8
REQUEST- 9:23 44:20,25
REQUESTED- 3:1

47:13
REQUIRED- 14:8
RESIDENCE- 31:11, 12
RESOLUTION- 41:16
RESOLVED- 42:8
RESPECT- 41:7
RESPONSE- 21:3,5 30:1 34:2
RESPONSIBLE- 4:6, 9,13
RETAIN- 11:12,14
RETURN- 12:14
RETURNED- 39:24 45:8,20
ROBERT- 41:22

S
SABATINI- 3:10, 12 5:15 6:1,4,12, 14 9:11,12 10:10, 18 13:7 16:17,23 17:1,11,15 22:21 23:17,18,22 24:1, 9,15 25:5,17,18 26:15,24 29:8,10 32:21,23 35:5 36:6,18 39:19,21, 25 40:3 41:3,19, 23 42:3,17 43:15, 17 44:21 45:1,5, 6,24 46:6,16 47:6
SABATINI'S- 41:9
SAFE- 7:4
SATISFACTION- 24:24
SCHAUB- 8:21,24 9:2,7,13 10:4 16:21 22:22,24 23:20,23,25 24:5, 11 26:17,19,23 35:9,15,18,20,21 36:1,5,11,15,17 37:6,8 40:1,2,20, 23 41:6 43:13 46:1,4,11,14 47:12
SCREEN- 33:2 36:22,25 37:3,25 39:15
SCREENS- 37:2
SECOND- 30:11 36:20 44:23
SEE- 20:14 22:13 25:21 38:19 41:4
SEEKING- 21:19

SENDING- 43:21
SENT- 9:25 15:16 17:7 22:25 26:25 27:2,24 28:14,18 42:11,13,15 43:5 44:4,7
SENTENCE- 30:11
SEPARATE- 9:4
SEPTEMBER- 48:17
SERIES- 16:8 40:21,24
SERVICE- 16:6,9 23:15 30:7
SET- 10:21
SETTLED- 40:10
SHORTCUT- 22:12
SHORTHAND- 33:11, 24
SHOT- 37:25 39:15
SHOW- 29:6 31:2
SHOWING- 23:5 32:24
SIT- 15:1
SITE- 10:22
SITTING- 7:17
SITUATION- 5:9
SIX- 12:15,16
SOLICITED- 30:7
SOLIDIFIED- 30:8
SOMEONE'S- 11:6
SOUND- 48:9
SPECIFIC- 9:6 34:12 37:20
SPECIFICALLY- 23:16 24:8,9
SPECIFICS- 34:16
SPELL- 3:5
STACY- 41:19,23
STANDARD- 17:5 31:14
STANDING- 5:21, 24 10:25
START- 35:10
STATE- 3:13 27:2
STATEMENT- 16:16 17:19 19:10,15 22:20 26:25 27:2, 21 28:10 30:18 31:15 42:13 43:19,23 44:3,6, 7 45:1
STATEMENTS- 15:19 17:6 27:22, 23,24 28:5,7,14, 17,25 30:23 42:11,15 43:21

44:13
STAY- 35:15
STIPULATED- 19:21
STIPULATION- 16:18
STOP- 10:2,4
STOPPED- 28:5
STORE- 12:20,21 23:17 24:25 25:1 33:13 38:13 42:24
STRIKE- 40:1
SUBTRACT- 31:25
SUCCESSFUL- 37:17
SUPPLEMENTING- 41:1
SURELY- 23:23
SUSTAIN- 8:25 24:10,12
SWITCH- 35:13
SWORN- 3:4
SYSTEM- 28:18 30:5,14,16

T
TANK- 11:4,6,8, 12,14,15,21 12:15 14:20,21, 24 15:2,7,8,9,11, 13 18:23 19:8,12, 14,16,21,25 20:14,19,25 21:7, 8,13 23:13 24:4, 20 27:10 29:5 31:15,16,18,23 32:4,8 33:24 34:13 40:7 42:24 43:1,3 45:15 46:21,23 47:9
TANKS- 11:8 31:5, 9,10,13,19,20,22 34:20,24 35:1,2 39:24 43:10 45:8, 11,14,19
TECH- 32:3,8 34:8 35:1
TECHNICIAN- 21:6 39:16,17 45:13
TELLING- 19:13 23:22
TEN- 15:1
TEN-DAY- 39:5
TERMS- 30:6 39:22 40:3 41:9 46:20 47:8
TESTIMONY- 3:2 37:24 39:13 41:7

43:22
**THAT'D-** 38:10
**THEIRS-** 14:25
15:3
**THEY'D-** 13:4
**THIRD-** 24:5 38:5
**THOMAS-** 3:4
**TIME-** 9:15 10:25
24:6 28:1 30:18,
20,21 33:15 34:8,
13 39:1 40:12
42:22 43:24 44:4,
9 45:16
**TIMES-** 31:4
**TODAY-** 4:17 7:22
33:12
**TOM-** 3:2
**TOOK-** 35:2
**TOP-** 31:7
**TOPIC-** 45:7
**TOTAL-** 23:7 25:25
**TOUCH-** 41:15
**TRANSCRIBED-** 3:3
47:14
**TRANSCRIBER-**
48:5,8
**TRANSCRIPT-** 48:8
**TRANSCRIPTS-**
48:18
**TRUCK-** 45:16
**TURNED-** 17:3
**TWICE-** 25:23 26:1
**TWO-** 39:7

---
U
---

**ULTIMATELY-**
10:17 15:5
**UNAWARE-** 41:13
**UNDERSTANDING-**
22:19 23:11 41:8,
11
**UNDERSTOOD-**
39:24 43:22
**UNHOOKED-** 45:17
**UNIQUE-** 10:12,14
39:5
**UNIQUENESS-** 10:12
**UNLESS-** 9:9
23:18,21,24
27:12 31:4 44:10
**UNPAID-** 13:5
**UNRESOLVED-** 28:1
**USED-** 9:14 14:12
18:8,11 36:6
38:23 40:7 43:2
**USER-** 19:2

**USING-** 24:6
**UTILITIES-** 41:25

---
V
---

**VAGUE-** 9:1
**VALUE-** 18:11,24
20:7 21:13 23:8
24:8 46:21
**VARIETY-** 9:23
**VARIOUS-** 37:2
**VERBAL-** 21:3,5
34:2
**VERBATIM-** 29:21
**VICE-** 3:14
**VOICE-** 32:16
34:7 39:17

---
W
---

**WANTING-** 38:21
**WASN'T-** 21:16
35:3,4
**WAYS-** 31:21
**WE'RE-** 6:6 11:3
18:13 20:24
21:19 27:5,7
**WELCOME-** 3:9
**WEREN'T-** 28:5
**WHEN'S-** 34:8
**WHEREUPON-** 47:13
**WHO'S-** 4:15
**WHOLE-** 9:17 46:6
**WILL-** 16:20
19:20 30:18,23
34:6 36:11,15
41:24
**WILLIAMS-** 41:19,
24
**WILLING-** 8:4
**WISH-** 13:24
15:14 30:19
**WITNESS-** 3:4,7,9
6:3,8,13 9:4,9
10:9 22:16,17
23:1,3,7 25:8,10,
13,16,19,22,24
26:2,5,7,10,12
29:23,25 36:14
44:22,24 45:3
**WON'T-** 26:22,23
37:24 39:13
**WORD-** 16:13,14
**WORDS-** 11:2
**WORK-** 16:7 33:3
37:12 39:6
**WORKS-** 9:17
**WORTH-** 19:18

**WOULDN'T-** 13:13
**WRITE-** 12:1,15
14:3
**WRITING-** 5:21
6:7 7:16 14:6
**WRITINGS-** 6:20
7:9
**WRITTEN-** 4:25
5:5,12 6:2,5,6
19:3

---
Y
---

**YEARS-** 3:16 15:1
**YOKUM-** 33:14
38:13
**YOU'D-** 22:11
30:10
**YOU'RE-** 3:9 4:2
5:8,13 7:13 8:9,
20 14:6,7,8
21:18 22:2 24:3,
13 29:24 30:16
36:3